## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GE HEALTHCARE BIO-SCIENCES AB, GE HEALTHCARE BIO-SCIENCES CORPORATION, and GENERAL ELECTRIC COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> BIO-RAD LABORATORIES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )    C.A. No. 18-1899-CFC |

## DEFENDANT BIO-RAD LABORATORIES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Tel: (650) 801-5000

David Bilsker
Felipe Corredor
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
Tel: (415) 875-6600

Anne S. Toker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
Tel: (212) 849-7000

Dated:  January 30, 2019
6073539 / 45671

Bindu A. Palapura (#5370)
Alan R. Silverstein (#5066)
Jennifer Penberthy Buckley (#6264)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
bpalapura@potteranderson.com
asilverstein@potteranderson.com
jbuckley@potteranderson.com

*Attorneys for Defendant Bio-Rad Laboratories, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ............................................1

III.   SUMMARY OF ARGUMENT ....................................................................4

IV.   SUMMARY OF FACTS ...............................................................................4

      A.      Bio-Rad Has No Meaningful Ties to Delaware ..............................4

      B.      Plaintiffs Have No Meaningful Ties to Delaware.............................5

V.     THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK ..........................................................................6

      A.      The Private Interest Factors Favor Transfer to S.D.N.Y. ...............7

             1.      Delaware Is Not Plaintiffs' Originally Chosen Forum ............7

             2.      Bio-Rad's Preferred Forum Weighs in Favor of Transfer ..........7

             3.      The Remaining Private Interest Factors Are Neutral...................8

      B.      Public Interest Factors Also Weigh in Favor of Transfer .......................8

             1.      Practical Considerations Favor Transfer.............................8

             2.      Court Congestion Favors Transfer..................................9

VI.   IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ....................................9

      A.      The Private Interest Factors Favor Transfer to the Northern District of California ...............................................................10

             1.      Delaware Is Not Plaintiffs' Originally Chosen Forum ............10

             2.      Bio-Rad's Preferred Forum Weighs in Favor of Transfer ..........10

             3.      Plaintiffs' Alleged Claims Did Not Arise in Delaware ............11

             4.      Convenience of the Parties Favors Transfer .......................12

             5.      Convenience of the Witnesses Favors Transfer....................14

             6.      The Location of Documents Favors Transfer ......................15

      B.      Public Interest Factors Also Weigh in Favor of Transfer .......................16

             1.      Practical Considerations Favor Transfer............................16

             2.      The Northern District of California Has a Strong Local Interest in This Case........................................................17

VII.   CONCLUSION........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ANI Pharms., Inc. v. Method Pharms., LLC*,
  C.A. No. 17-1097, 2019 WL 176339 (D. Del. Jan. 11, 2019).................................................10

*Bio-Rad Labs., Inc. v. GE Healthcare Bio-Scis. AB*,
  No. IPR2015-01826, 2016 WL 2865520 (PTAB Feb. 29, 2016).............................................3

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
  C.A. No. 11-1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013).......................................13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................15

*In re Google Inc.*,
  No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017)...................................................13

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..............................................................................................17

*Illumina, Inc. v. Complete Genomics, Inc.*,
  C.A. No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010)................................................12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)...............................................................................................*passim*

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  C.A. No. 11-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013)....................................13, 17

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221, 1223-24 (Fed. Cir. 2011) ...........................................................................14, 16

*Medicis Pharm. Corp. v. Nycomed U.S. Inc.*,
  C.A. No. 10-1099-SLR, 2011 WL 2457598 (D. Del. June 16, 2011) ...................................7, 9

*In re Micron Tech., Inc.*,
  875 F.3d 1091 (Fed. Cir. 2017)................................................................................................6

*Mitel Networks Corp. v. Facebook*,
  943 F. Supp. 2d 463 (D. Del. 2013)................................................................................*passim*

*Neil Bros. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ....................................................................................15

*OpenTV, Inc. v. Netflix, Inc.*,
  C.A. No. 12-1733(GMS), 2014 WL 1292790 (D. Del. Mar. 31, 2014) ..................6, 11, 14, 17

*Papst Licensing GmbH v. Lattice Semiconductor Corp.*,
  126 F. Supp. 3d 430 (D. Del. 2015).................................................................10, 11, 14, 15

*Segan LLC v. Zynga Inc.*,
  C.A. No. 11-670-GMS, 2014 WL 1153388 (D. Del. Mar. 19, 2014) .....................................13

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012) .......................................................... 12

*In re Verizon Bus. Network Servs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011) ................................................................. 13

*Wacoh Co. v. Kionix Inc.*,
   845 F. Supp. 2d 597 (D. Del. 2012) .......................................................... 14

*Williamson v. Google Inc.*,
   C.A. No. 14-216-GMS, 2015 WL 13311284 (D. Del. Mar. 2, 2015) ...................... 11

**Statutory Authorities**
28 U.S.C. § 1400(b) .................................................................................. 9

**Treatises**
15 Charles Allen Wright, *Federal Practice and Procedure* (4th ed. 2018) ................ 15

## I. INTRODUCTION

This case is a continuation of a case filed by Plaintiffs GE Healthcare Bio-Sciences AB ("Bio-Sciences AB"), GE Healthcare Bio-Sciences Corporation ("Bio-Sciences Corp."), and General Electric Company (collectively, "Plaintiffs" or "GE") against Defendant Bio-Rad Laboratories Inc. ("Bio-Rad") in the Southern District of New York. Aside from Bio-Rad and Bio-Sciences Corp.'s place of incorporation, this case has no connection to Delaware. Bio-Rad is headquartered in California, Bio-Sciences AB in Sweden, and Bio-Sciences Corp. and General Electric Company in Massachusetts. There are no relevant documents or sources of evidence located in Delaware. Nor does this Court have the experience with the patent family at issue in the case that the Southern District of New York developed over a year of active litigation involving the parent patent, including preliminary injunction proceedings. Based on the *Jumara* factors, this case should be transferred to the Southern District of New York or, in the alternative, the Northern District of California.

## II. NATURE AND STAGE OF PROCEEDINGS

GE sued Bio-Rad in the U.S. District Court for the Southern District of New York ("S.D.N.Y.") on September 2, 2014, accusing Bio-Rad's NGC chromatography systems—the same products accused of infringement in this case—of infringing U.S. Patent No. 8,821,718 ("the '718 patent"), which issued on September 2, 2014. D.I. 1, ¶ 29; Complaint, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Sept. 2, 2014), ECF No. 1. On September 9, 2014, GE moved for a preliminary injunction to prevent Bio-Rad from making, using, or selling the accused NGC systems. D.I. 1, ¶ 31; Motion for Preliminary Injunction, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Sept. 9, 2014), ECF No. 8. The S.D.N.Y. court held a preliminary injunction hearing at which it heard testimony from Drs. Bruce Gale, James Kearl, Nigel Darby, and Carl Scandella, three of whom

reside in the western United States.  Dr. Gale is a professor at the University of Utah and Dr. Kearl is a professor Brigham Young University in Utah.  Dr. Scandella resides in Washington state.  Dr. Darby resides in Sweden.  Among the issues raised at the preliminary injunction hearing, Bio-Rad presented a non-infringement argument based on the fact that, contrary to the claims of the '718 patent, the fluidics on the NGC modules were not completely separated from the electronics.  *See* Bio-Rad Laboratories, Inc.'s Amended Opposition to GE's Motion for a Preliminary Injunction, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Nov. 17, 2014), ECF No. 50, at 12-15.  The case proceeded through discovery and claim construction briefing.  *See* Order Granting Motion to Stay, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 14, 2015), ECF No. 192, at 2.

While the S.D.N.Y. litigation was ongoing, on September 3, 2015, Bio-Rad filed an *inter partes* review ("IPR") petition at the Patent Trial and Appeal Board ("PTAB"), seeking to invalidate the '718 patent based on several prior art publications.  D.I. 1, ¶ 34; Petition for *Inter Partes* Review, *Bio-Rad Labs., Inc., v. GE Healthcare Bio-Scis. AB*, No. IPR2015-01826, 2015 WL 5658647 (PTAB Sept. 3, 2015).  Then, on December 8, 2015, GE moved to stay the case pending a reissue application regarding the '718 patent that it planned to file in light of prior art brought to light through Bio-Rad's pursuit of third-party discovery in the S.D.N.Y. litigation.  GE's Letter Motion to Stay, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 14, 2015), ECF No. 189.  The S.D.N.Y. court stayed GE's lawsuit against Bio-Rad pending the outcome of the reissue proceedings and terminated the then-still-pending preliminary injunction motion.  D.I. 1, ¶ 39; Order Granting Motion to Stay, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 14, 2015), ECF No. 192.  Subsequently, on January 27, 2016, GE filed a reissue application for the '718 patent.  D.I.

1, ¶ 43.  The PTAB also instituted review of some (but not all) claims of the '718 patent and ultimately invalidated all instituted claims.  D.I. 1, ¶¶ 44, 53; *Bio-Rad Labs., Inc. v. GE Healthcare Bio-Scis. AB*, No. IPR2015-01826, 2016 WL 2865520 (PTAB Feb. 29, 2016).

In parallel with the IPR proceedings and the prosecution of the reissue application for the '718 patent, GE prosecuted at least five continuation patent applications claiming priority to the '718 patent, including four that ultimately issued as the patents asserted in this case: U.S. Patent Nos. 9,709,589 ("the '589 patent"), 9,709,590 ("the '590 patent"), 9,709,591 ("the '591 patent"), and 9,671,420 ("the '420 patent") (collectively, "patents-in-suit" or "asserted patents").  *See* D.I. 1, ¶¶ 46-49, 51, 57-58.  All of these patents—like the '718 patent itself—are entitled "Automated Fluid Handling System."  D.I. 1, Exs. A-D.

On November 13, 2018, the '718 patent reissued as U.S. Patent No. RE47,124 ("the reissued patent").  D.I. 1, ¶ 60.  The parties notified the S.D.N.Y. court of this development, and the court scheduled a status conference (now set for February 11, 2019) to discuss how to proceed now that the reissued patent has issued.  *See* Joint Status Report, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 4, 2018), ECF No. 214; Order Granting Letter Motion to Adjourn Conference, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 13, 2018), ECF No. 217.

GE filed the complaint in this case on November 30, 2018.  D.I. 1.  GE informed the S.D.N.Y. court about the filing of the complaint in this case and indicated that they would like to transfer the S.D.N.Y. case to this District.  Joint Status Report, *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 4, 2018), ECF No. 214, at 2.

Bio-Rad is filing its answer to the complaint concurrently with this motion to transfer.  No case schedule has been entered by this Court.

## III.    SUMMARY OF ARGUMENT

This case should be transferred to the S.D.N.Y. because that court is already familiar with the parent patent in the patent family of the patents-in-suit: the S.D.N.Y. court presided over preliminary injunction proceedings, claim construction briefing was completed in that court, and discovery has taken place (and discovery disputes have been resolved) there.  In the alternative, this case should be transferred to the Northern District of California.  It is undisputed that this action could have been brought in the Northern District of California, where Bio-Rad maintains its principal place of business.  Bio-Rad's headquarters and the center of its research, development, design, engineering, supply chain, manufacturing, sales, distribution, marketing, and financial activities related to Bio-Rad's NGC chromatography system are located in the Northern District of California.  Bio-Rad has no presence in or any tie to Delaware other than Delaware being its place of incorporation.  No evidence or witnesses are located in Delaware.  Delaware has no past experience with the patent family of the patents-in-suit.  Accordingly, the private and public interest factors favor transferring this case to the Southern District of New York or, in the alternative, the Northern District of California.

## IV.    SUMMARY OF FACTS

### A.    Bio-Rad Has No Meaningful Ties to Delaware

Apart from its incorporation, Bio-Rad has no meaningful connection to Delaware.  Bio-Rad has been headquartered in Northern California since its founding in 1952. *See* Eng Decl. ¶ 6. Bio-Rad has no offices in the District of Delaware.  *See id.* ¶ 14.

Bio-Rad's management personnel for the NGC chromatography systems, the only identified accused products, are principally located at its Hercules, California headquarters, in the Northern District of California.  *See id.* ¶ 9; *see also id.* ¶ 11 (identifying five specific managers who are located in Bio-Rad's Hercules headquarters and are likely to have knowledge regarding

4

the accused products). The vast majority of the research, development, design, functionality, implementation, control, supply chain, and manufacturing activities related to the NGC chromatography systems, as well as any important marketing, sales, pricing, and finance decisions related to these systems, occur at Bio-Rad's California headquarters. *See id.* ¶ 10.

Documentation relating to the NGC chromatography systems is primarily located in or maintained by employees in Bio-Rad's California headquarters. *See id.* For example, documents related to research, development, design, functionality, implementation, control, business decision-making, financial data tracking, and marketing of the NGC chromatography systems are maintained and accessible by employees in Bio-Rad's California headquarters. *See id.* Bio-Rad has no offices, no employees, and no documents in Delaware. *See id.* ¶¶ 14-15.

### B. Plaintiffs Have No Meaningful Ties to Delaware

The plaintiff that developed the technology that is the subject of the patents-in-suit, Bio-Sciences AB, is a Swedish company based in Uppsala, Sweden and has no connection of any kind to Delaware. D.I. 1, ¶ 2. The second plaintiff, Bio-Sciences Corp., is incorporated in Delaware but has no other ties to this District, being headquartered in Massachusetts. *Id.* ¶ 3. The third, General Electric Company, parent company of the first two of the plaintiffs, is a New York corporation headquartered in Massachusetts. *Id.* ¶ 4. Though this last plaintiff has ties to Delaware, they are unrelated to the subject matter of this case.

The two named inventors of the patents-in-suit, Johan Blomberg and Mats Lundkvist, are located in Sweden, not Delaware. D.I. 1, Exs. A-D. Christopher H. Yaen, who prosecuted the asserted patents, works in the Washington, D.C. office of the law firm Arent Fox. Any documents Plaintiffs have related to this case should be located in Sweden, where the technology was developed, or Massachusetts, where the GE U.S. entity that competes with Bio-Rad, Bio-Sciences Corp., is headquartered. *See* D.I. 1, ¶¶ 9-15.

**V.      THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF
NEW YORK**

This action should be transferred to S.D.N.Y.  Indeed, the previous time Plaintiffs sued

Bio-Rad for infringement of a patent in the patent family asserted in this case, they brought the

action in S.D.N.Y.  At no time did Bio-Rad contest personal jurisdiction or venue in S.D.N.Y.  In

requesting that the S.D.N.Y. court transfer the case to this District, Plaintiffs have claimed that *TC*

*Heartland* prevents S.D.N.Y. from being a proper venue.  Joint Status Report, *GE Healthcare Bio-*

*Scis. AB v. Bio-Rad Labs., Inc.*, No. 2:14-CV-07080-LTS-SN (S.D.N.Y. Dec. 4, 2018), ECF No.

214, at 2.  Bio-Rad made clear, however, that it is waiving and will therefore not raise any improper

venue defense in the S.D.N.Y.  *See id.* at 3 ("Bio-Rad is prepared to waive any challenge to venue

in this District in order to further efficiency of having the new patents in the same family as the

'718 patent asserted in this case litigated by this Court."); *In re Micron Tech., Inc.*, 875 F.3d 1091,

1096 (Fed. Cir. 2017) (improper venue defense is waivable).

Because this action could have been brought in S.D.N.Y., the issue of transfer involves a

consideration of "whether on balance the litigation would more conveniently proceed and the

interests of justice be better served by transfer to a different forum."  *See Jumara v. State Farm*

*Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (directing transfer based on convenience and fairness

considerations); *see also OpenTV, Inc. v. Netflix, Inc.*, C.A. No. 12-1733 (GMS), 2014 WL

1292790, at *4 (D. Del. Mar. 31, 2014) (transferring case filed by Delaware corporation plaintiff

against Delaware corporation defendant to a more convenient district, "[c]onsidering the *Jumara*

private and public interest factors as a whole").

The S.D.N.Y. court is already familiar with the parties and the technology.  That court

already held a preliminary injunction hearing regarding the parent to the patent family of the

patents-in-suit in this case and received the parties' claim construction briefing.  The parties have

already conducted discovery in S.D.N.Y.  In contrast, because this case was filed recently, this Court is not familiar with the asserted patents or patents in their family.  Because transfer would best serve the interests of convenience and justice, this case should be transferred to the S.D.N.Y.

### A.    The Private Interest Factors Favor Transfer to S.D.N.Y.

The private interest factors weigh in favor of transfer: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claims arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) location of books and records.  *See Jumara*, 55 F.3d at 879.  Although the third through sixth factors are neutral when weighing the choice between this District and S.D.N.Y., the first two factors support transfer to S.D.N.Y.

### 1.    Delaware Is Not Plaintiffs' Originally Chosen Forum

Plaintiffs' previous litigation alleging infringement of a patent in the family of the patents-in-suit, the '718 patent (the parent patent of the family), was in the S.D.N.Y.  Indeed, Plaintiffs now seek to transfer the case pending in their originally chosen forum to this District.  Thus, the first factor weighs in favor of transfer.

### 2.    Bio-Rad's Preferred Forum Weighs in Favor of Transfer

This motion, as well as the position articulated by Bio-Rad to the S.D.N.Y. court (including its waiver of any improper venue defense) demonstrates that S.D.N.Y. is significantly more convenient because of the activity before that court that has already occurred and further demonstrates that it is Bio-Rad's preference to litigate in the S.D.N.Y.  Accordingly, the second factor strongly weighs in favor of transfer.  *See Medicis Pharm. Corp. v. Nycomed U.S. Inc.*, C.A. No. 10-1099-SLR, 2011 WL 2457598, at *3 (D. Del. June 16, 2011) (granting defendant's motion to transfer to S.D.N.Y. where there was already another proceeding sharing common questions of law and fact).

### 3. The Remaining Private Interest Factors Are Neutral

As discussed in Section VI.A below, none of the third through sixth factors weigh in favor of keeping this case in this District, given that (1) the claims arise most strongly in the Northern District of California and otherwise arise nationally, (2) the parties are not located in Delaware, (3) the witnesses are not located in Delaware either, and (4) no books and records are located in Delaware. The same applies to S.D.N.Y., making the balance of these factors neutral as between this District and S.D.N.Y.

### B. Public Interest Factors Also Weigh in Favor of Transfer

The public interest factors include: (1) practical considerations that could make the trial easy, expeditious, or inexpensive; (2) relative administrative difficulty in the two fora resulting from court congestion; (3) local interest in deciding local controversies at home; (4) enforceability of the judgment; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara*, 55 F.3d at 879-80. Although the third through sixth factors are either inapplicable or neutral,[1] the first three factors support transfer to S.D.N.Y.

### 1. Practical Considerations Favor Transfer

In determining transfer, courts consider the "practical considerations that could make the trial easy, expeditious, or inexpensive." *See Jumara*, 55 F.3d at 879. The case in which Plaintiffs accused GE of infringing the '718 patent—parent to the patent family of the patents-in-suit—was litigated before Judge Swain in the S.D.N.Y. through preliminary injunction proceedings, discovery, and claim construction briefing. By contrast, this case has only recently been filed, and this Court has yet to devote any significant resources to its adjudication or familiarize itself with the asserted patents or the accused products. Bio-Rad is filing its answer to the complaint

---

[1]  For the same reasons why the third through sixth private interest factors are neutral, the third public interest factor is also neutral.

concurrently with this motion, and no scheduling order has yet been entered.  Nor are any related cases pending in this District.  Thus, the expenditure of judicial resources would be minimized through transfer.  *See Medicis*, 2011 WL 2457598, at *3.  Accordingly, this factor favors transfer.

### 2.      Court Congestion Favors Transfer

"[T]he relative administrative difficulty in the two fora resulting from court congestion" favors transfer here.  *See Jumara*, 55 F.3d at 879.  As discussed above, the parties have already litigated significant matters in the S.D.N.Y. court.  That case involves the same accused products and a parent to the patent family of the asserted patents in this case.  Because these cases share common questions of law and fact, it would be "in the interest of judicial economy to transfer the current lawsuit . . . so that both courts may avoid redundant efforts and the possibility of inconsistent results."  *Medicis*, 2011 WL 2457598, at *3.  This factor favors transfer to S.D.N.Y.

## VI.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

This action could have been brought in the Northern District of California.  Under 28 U.S.C. § 1400(b), venue is proper "where the defendant has committed acts of infringement and has a regular and established place of business."  Because Bio-Rad is headquartered in the Northern District of California, this action could have been brought there, and the issue of transfer involves a consideration of "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *See Jumara*, 55 F.3d at 879.  Because transfer would best serve the interests of convenience and justice and because the public and private interest factors favor transfer, this case should be transferred to the Northern District of California.

**A.**     **The Private Interest Factors Favor Transfer to the Northern District of California**

The private interest factors weigh in favor of transfer: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claims arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) location of books and records. *See Jumara*, 55 F.3d at 879.

**1.**     **Delaware Is Not Plaintiffs' Originally Chosen Forum**

As discussed above, Plaintiffs' previous litigation alleging infringement of a patent in the family of the patents-in-suit, the '718 patent (the parent patent of the family), was in S.D.N.Y. Thus, the first factor is at best neutral with respect to Plaintiffs' decision to file this case in the District of Delaware.

**2.**     **Bio-Rad's Preferred Forum Weighs in Favor of Transfer**

Due to the proximity to potential witnesses and evidence and to Bio-Rad's headquarters, it is Bio-Rad's alternative preference to litigate in the Northern District of California. Accordingly, the second factor strongly weighs in favor of transfer. *See ANI Pharms., Inc. v. Method Pharms., LLC*, C.A. No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (granting defendants' motion to transfer and recognizing defendants' legitimate and rational reason for preferring to litigate in another district because "they are located [in] the district . . . and evidence is in the district"); *Mitel Networks Corp. v. Facebook*, 943 F. Supp. 2d 463, 470 (D. Del. 2013) (defendant "clearly prefers to litigate in the Northern District of California, the District where it operates its principal place of business and headquarters.  This factor weighs in favor of transfer."); *Papst Licensing GmbH v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) ("As this Court has often held, the physical proximity of the proposed transferee district to a defendant's

principal or key place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer.").

### 3.    Plaintiffs' Alleged Claims Did Not Arise in Delaware

Bio-Rad designed and developed the accused product, the NGC chromatography system, at its California headquarters and continues to develop and market these systems from its headquarters.  *See* Eng Decl. ¶¶ 9-10; *see also Williamson v. Google Inc.*, C.A. No. 14-216-GMS, 2015 WL 13311284, at *2 (D. Del. Mar. 2, 2015) (granting motion to transfer in part because defendant "designed and developed the accused . . . product in Mountain View; [defendant] continues to develop and market [the accused product] from that location.   Therefore the infringement claims have 'deeper roots' in the Northern District of California than in the District of Delaware"); *OpenTV*, 2014 WL 1292790, at *2 (factor regarding where claim arose weighs in favor of transfer "because the products alleged to be infringing were developed and designed in the Northern District of California"); *Mitel,* 943 F. Supp. 2d at 471 (factor weighs in favor of transfer "[b]ecause [defendant] created, developed, and engineered its product largely in the Northern District of California").  While Bio-Rad may sell the NGC chromatography systems nationwide and even worldwide, the connection of this case to the Northern District of California is far stronger than Delaware.  *See Papst*, 126 F. Supp. 3d at 439 ("Although some accused products may be used to perform the patented methods in Delaware (after sale here), it is clear that the allegedly infringing acts at issue have a far stronger connection to the Northern District of California than they do with Delaware (or any other district).  In such a circumstance, the Court finds that this factor weighs in favor of transfer.").  Accordingly, this factor weighs in favor of transfer.

### 4.    Convenience of the Parties Favors Transfer

The convenience of the parties takes into account "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitel,* 943 F. Supp. 2d at 471 (quoting *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012)).

With respect to physical location, Bio-Rad maintains its principal place of business in the Northern District of California, and the employees involved with the NGC chromatography systems are primarily located in the Northern District of California. *See* Eng Decl. ¶¶ 9-11. Plaintiffs are headquartered in Sweden and Massachusetts. *See supra*, Section IV.B. Since neither party is physically located in Delaware, both sides would have to pay for travel to and from and lodging in Delaware.

With respect to costs, litigation in Delaware will necessitate logistical and operational costs for both sides. Because none of the witnesses for either party are located in Delaware, everyone will need to travel to this district for trial. *See Illumina, Inc. v. Complete Genomics, Inc.*, C.A. No. 10-649, 2010 WL 4818083, at *3 (D. Del. Nov. 9, 2010) (noting that this factor weighs in favor of transfer where "litigating the action in the Northern District of California would minimize the cost and level of disruption on some of the day-to-day business operations caused by trial or other legal proceedings"). Bio-Rad employees with knowledge of the design, development, and marketing of the accused NGC chromatography systems reside or work in California. *See* Eng Decl. ¶¶ 9-11. There are no Bio-Rad witnesses located in the District of Delaware. *See id.* ¶¶ 13-14. Both named inventors and the prosecuting attorneys are located outside of Delaware. *See supra*, Section IV.B. Given that Bio-Rad's witnesses are located in the Northern District of

California, and no witnesses for GE reside in Delaware, proceeding with litigation and trial in the Northern District of California will result in a significant reduction of costs of attendance. *See, e.g., In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561-62 (Fed. Cir. 2011) (concluding that transferee forum was far more convenient where many witnesses resided in transferee forum, and none resided within 100 miles of plaintiff's chosen forum); *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (concluding that "the evidence overwhelmingly supports a conclusion that [the 'locations and sources of proof' factor] weighs strongly in [defendant's] favor" where "the vast majority of [defendant's] employees—in particular those responsible for projects relating to the accused products—work and reside in the Northern District of California").

Although courts consider the relative financial ability of each party to bear litigation-related travel costs, they "must also account for the absolute costs likely to flow from its transfer decision." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013). Cross-country litigation would necessitate more costs and disruptions. *See Linex Techs., Inc. v. Hewlett-Packard Co.*, C.A. No. 11-400-GMS, 2013 WL 105323, at *4 (D. Del. Jan. 7, 2013) (whether defendant may have greater financial resources does "not blind the court to the inevitable costs and disruptions that cross-country litigation imposes."). In the S.D.N.Y. litigation as well as in this case, Arnold & Porter attorneys from California and the District of Columbia appeared on behalf of GE. *See Segan LLC v. Zynga Inc.*, C.A. No. 11-670-GMS, 2014 WL 1153388, at *3 n.2 (D. Del. Mar. 19, 2014) (noting that arguments about costs imposed by a transfer are undercut where plaintiffs opposing transfer are "represented by an international law firm with locations in [the transferee forum]"). Thus, "while both parties may be financially able to litigate in Delaware, it would undoubtedly reduce litigation costs and be

more convenient for the parties to litigate where they are physically located."[2]  *OpenTV*, 2014 WL 1292790, at *2 (concluding "this factor weighs strongly in favor of transfer to Northern California").  Accordingly, this factor weighs in favor of transfer.

### 5.    Convenience of the Witnesses Favors Transfer

The next factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879.  In the S.D.N.Y. action, GE sought to depose, among others, Shawn Anderson, Richard Lee, and Farah Mavandadi, all of whom were once employed by Bio-Rad in its Hercules, California headquarters but none of whom are employed by Bio-Rad.  *See* Eng Decl. ¶ 12; Naravage Decl. Exs. A-C. These former Bio-Rad employees all still work in the Northern District of California.  Naravage Decl. Exs. D-F.  In addition, as set forth above, the Northern District of California is clearly more convenient for Bio-Rad witnesses, and Delaware is not more convenient for GE witnesses.  *See* Eng Decl. ¶ 11.  These witnesses may become unavailable in the District of Delaware.  *See Wacoh Co. v. Kionix Inc.,* 845 F. Supp. 2d 597, 602-03 (D. Del. 2012) ("[W]ith the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees.").

Although former employees (including Ms. Mavandadi and Messrs. Anderson and Lee) are no longer under Bio-Rad's control, their testimony concerning the development and/or marketing of the NGC chromatography systems may very well be needed.  Such ex-employees "would not be subject to this Court's subpoena power, but would likely not move out-of-state and

---

[2]   Even though Bio-Rad is a Delaware entity, the Federal Circuit has warned against placing too much weight on this fact and has emphasized that a party's state of incorporation is not dispositive. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (party's state of incorporation "is certainly not a dispositive fact in the venue transfer analysis"); *accord OpenTV*, 2014 WL 1292790, at *1, *5 (transferring case filed by Delaware corporation plaintiff against Delaware corporation defendant); *Papst*, 126 F. Supp. 3d at 434 (granting defendants' motion to transfer where "[d]efendants are . . . all incorporated in Delaware").

therefore would continue to be subject to the subpoena power in the Northern District of California." *See id.* This action should therefore proceed in a forum where the Court has subpoena power to compel the attendance of such witnesses at trial. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."). The convenience of Bio-Rad ex-employees, who are third-party witnesses, is "often cited as the most important factor in determining whether a case should be transferred pursuant to § 1404(a)." *See* 15 Charles Allen Wright et al., *Federal Practice and Procedure* § 3851 (4th ed. 2018). As a result, this factor favors transfer.

### 6.     The Location of Documents Favors Transfer

The final private interest factor is "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *See Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *See Genentech,* 566 F.3d at 1345 (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *Mitel,* 943 F. Supp. 2d at 474.

As discussed above, Bio-Rad's documents and records relating to the NGC chromatography systems are either located in or maintained from and accessible at Bio-Rad's California headquarters. *See* Eng Decl. ¶ 10. Bio-Rad does not store or maintain any documents in the District of Delaware, and no custodians of NGC chromatography system-related documents are located in the District of Delaware. *See id.* ¶¶ 13-14; *Papst*, 126 F. Supp. 3d at 443 (finding that this factor favors transfer where "[i]t is undisputed that the majority of relevant documentation regarding the claims and defenses in this case will be located in or near the Northern District of California, and not in Delaware"). Even though technological advances have made transportation

of electronic evidence less onerous than before, the physical location of the relevant books and records should not be disregarded.  *See Mitel,* 943 F. Supp. 2d at 474 (holding that "the court must nevertheless accord at least some weight to this factor"); *see also Link_A_Media,* 662 F.3d at 1224 (granting writ of mandamus directing transfer of venue based in part on ignoring location of books and records).  This factor also weighs in favor of transfer.

### B.      Public Interest Factors Also Weigh in Favor of Transfer

The public interest factors include: (1) practical considerations that could make the trial easy, expeditious, or inexpensive; (2) local interest in deciding local controversies at home; (3) enforceability of the judgment; (4) relative administrative difficulty in the two fora resulting from court congestion; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *See Jumara,* 55 F.3d at 879-80.  Although the third through sixth factors are either inapplicable or neutral, the first two factors support transfer to the Northern District of California.

### 1.      Practical Considerations Favor Transfer

In determining transfer, courts consider the "practical considerations that could make the trial easy, expeditious, or inexpensive."  *See Jumara*, 55 F.3d at 879.  Because Bio-Rad's headquarters and the documents and witnesses related to the NGC chromatography systems are located in Northern California, excessive litigation costs and unnecessary disruption to employees could both be avoided through transfer to the district where Bio-Rad and its witnesses and information are located.  *See Mitel*, 943 F. Supp. 2d at 475 (transfer appropriate where accused infringer's "employees, headquarters, primary engineering and design facilities, management team offices, potentially relevant documentation, and source code are in the Northern District of California").  Given that neither party operates nor has facilities, offices, or witnesses in Delaware, and no relevant third-party witnesses reside in Delaware, the practical considerations of efficiency,

expense, and ease weigh in favor of transfer to the Northern District of California. *See id*. at 476 ("[I]n consideration of the fact that neither party operates nor has facilities, offices, or employees in Delaware, the court finds that the practical considerations of efficiency, expense, and ease favor transfer."); *Linex*, 2013 WL 105323, at *6 ("[T]here is little reason to believe a California-based firm actually reduces its costs of litigating in this district merely by incorporating in Delaware."). Accordingly, this factor favors transfer.

### 2. The Northern District of California Has a Strong Local Interest in This Case

Courts also consider any "local interest in deciding local controversies at home." *See Jumara*, 55 F.3d at 879. Although patent infringement actions are generally national rather than local controversies, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *OpenTV*, 2014 WL 1292790, at *4 (quoting *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

The Northern District of California has a significant interest in this dispute because: (1) Bio-Rad headquarters and its witnesses are in that District; and (2) the accused product, the NGC chromatography system, was developed and is manufactured and managed by Bio-Rad staff, engineers, and managers in the Northern District of California. *See* Eng Decl. ¶¶ 9-10; *In re Hoffmann-La Roche Inc.,* 587 F.3d 1333, 1336 (Fed. Cir. 2009) (proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). In contrast, Bio-Rad maintains no offices or employees in the District of Delaware, *see* Eng Decl. ¶¶ 13-15, and Delaware has little connection to the events that gave rise to this suit. Accordingly, this factor weighs strongly in favor of transfer.

## VII.    CONCLUSION

In view of the private and public interest factors collectively weighing strongly in favor of transfer to S.D.N.Y. or, in the alternative, the Northern District of California, Bio-Rad respectfully requests that the Court grant this motion and transfer this case to S.D.N.Y. or, in the alternative, to the Northern District of California.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Tel: (650) 801-5000

David Bilsker
Felipe Corredor
Andrew E. Naravage
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
Tel: (415) 875-6600

Anne S. Toker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
Tel: (212) 849-7000

By:    */s/ Alan R. Silverstein*
        Bindu A. Palapura (#5370)
        Alan R. Silverstein (#5066)
        Jennifer Penberthy Buckley (#6264)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        bpalapura@potteranderson.com
        asilverstein@potteranderson.com
        jbuckley@potteranderson.com

*Attorneys for Defendant Bio-Rad Laboratories, Inc.*

Dated:  January 30, 2019
6073539 / 45671

18