IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GE HEALTHCARE BIO-SCIENCES AB, GE HEALTHCARE BIO-SCIENCES CORPORATION, and GENERAL ELECTRIC COMPANY | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Civil Action No. 18-1899-CFC |
| BIO-RAD LABORATORIES, INC., | : : : | |
| Defendant. | : | |

John W. Shaw, Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, Delaware; Jennifer Sklenar, Ryan N. Nishimoto, ARNOLD & PORTER KAYE SCHOLER LLP, Los Angeles, California; Jeffrey A. Miller, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, California; Matthew M. Wolf, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, District of Columbia, *Counsel for Plaintiffs*

Bindu A. Palapura, Alan R. Silverstein, Jennifer Penberthy Buckley, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Kevin P.B. Johnson, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Redwood Shores, California; David Bilsker, Felipe Corredor, Andrew E. Naravage, QUINN EMANUEL URQUHART & SULLIVAN, LLP, San Francisco, California; Anne S. Toker, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York, *Counsel for Defendant*

## <u>MEMORANDUM OPINION</u>

May 6, 2019
Wilmington, Delaware

_Cohn F. Connolly_

CONNOLLY, UNITED STATES DISTRICT JUDGE

Defendant Bio-Rad Laboratories, Inc. ("Bio-Rad") has moved pursuant to 28 U.S.C. § 1404(a) to transfer to the Southern District of New York this patent action filed by Plaintiffs GE Healthcare Bio-Sciences AB ("Bio-Sciences AB"), GE Healthcare Bio-Sciences Corporation ("Bio-Sciences Corp."), and General Electric Company ("GE Company") (collectively, "GE"). D.I. 10. In the alternative, Bio-Rad has moved for transfer to the Northern District of California. _Id._ For the reasons discussed below, I will deny Bio-Rad's motion.

## I.   Background

Bio-Rad is a Delaware corporation. D.I. 1 at ¶ 6. Bio-Sciences AB, Bio-Sciences Corp., and GE Company, respectively, are incorporated in Sweden, Delaware, and New York. _Id._ at ¶¶ 2–4. GE filed this action on November 30, 2018, alleging that Bio-Rad's Next Generation Chromatography ("NGC") system infringes four patents (the "GE Patents"). _Id._ at ¶¶ 1, 28.

In 2014, GE filed suit against Bio-Rad in the Southern District of New York, alleging infringement of a patent related to the GE Patents. D.I. 11 at 1, 4. The New York action was stayed pending _inter partes_ review of the asserted patent. D.I. 16 at 4. In December 2018, GE sought to have the stay lifted because PTAB proceedings regarding the asserted patent had concluded. _Id._ at 5. On March 18,

2019, the New York court ordered that the stay would remain in place pending the resolution of Bio-Rad's motion to transfer in the instant case. *See GE Healthcare Bio-Sciences AB, et al. v. Bio-Rad Labs., Inc.*, Case No. 14-7080, D.I. 223 at 6 (S.D.N.Y. Mar. 18, 2019).

## II. Whether the Case May Be Transferred to the Southern District of New York

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), an action "might have been brought" in the transferee forum "only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). "If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that [the plaintiff] would not have an unqualified right to bring [its] cause in the transferee forum." *Id.* (citation omitted). In *Shutte*, the Third Circuit considered there to be a "real question" about whether suit could have been brought in the proposed transferee forum against one of the two defendants moving for transfer, because although jurisdiction over the defendant was proper under Missouri's long-arm statute, "the legality of that statute had not been adjudicated, and there were strong doubts as to its validity." *Id.*

2

A patent infringement case "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). It is undisputed that Bio-Rad meets neither of these criteria. Bio-Rad is a Delaware corporation and therefore resides in Delaware, *see TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); and Bio-Rad does not even argue that it has a regular and established place of business in New York. Ignoring § 1400(b), Bio-Rad argues instead that this action could have been brought in the Southern District of New York because Bio-Rad has "made clear[] [ ] that it is waiving and will therefore not raise any improper venue defense in the [Southern District of New York]." D.I. 11 at 6. But Bio-Rad's post-hoc offer to waive any objections to venue in New York is irrelevant to the dispositive question under § 1404(a) of whether GE could have sued Bio-Rad in New York when it filed this lawsuit. Indeed, the Supreme Court expressly rejected Bio-Rad's argument in *Hoffman v. Blaski*, 363 U.S. 335 (1960), a case not cited by Bio-Rad in its opening brief. As the Court held in *Hoffman*:

> We do not think the § 1404(a) phrase "where it might have been brought" can be interpreted to mean, as petitioners' theory would require[], "where it may now be rebrought, with defendant's consent."
> . . . Of course, venue, like jurisdiction over the person, may be waived. . . . But the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of

3

the defendant but, rather, upon whether the transferee district was one in which the action "might have been brought" by the plaintiff.

*Id.* at 342–44.

Because § 1400(b) would have precluded GE from bringing this suit against Bio-Rad in the Southern District of New York, it cannot be said that GE had an "unqualified right" to bring the suit in that district at the time of the commencement of this action, and therefore *Shutte* bars the transfer of this action to the Southern District of New York.

## III.   Whether the Case Should be Transferred to the Northern District of California

It is undisputed that Bio-Rad's principal place of business is in the Northern District of California and that, therefore, GE could have brought this suit against Bio-Rad in that district under § 1400(b). As the party seeking transfer, Bio-Rad has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte*, 431 F.2d at 25. This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of

4

justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Although there is "no definitive formula or list of the factors to consider" in a

transfer analysis, the court in *Jumara* identified 12 interests "protected by the

language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the
> original choice; [2] the defendant's preference; [3]
> whether the claim arose elsewhere; [4] the convenience
> of the parties as indicated by their relative physical and
> financial condition; [5] the convenience of the
> witnesses—but only to the extent that the witnesses may
> actually be unavailable for trial in one of the fora; and [6]
> the location of books and records (similarly limited to the
> extent that the files could not be produced in the
> alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical
> considerations that could make the trial easy, expeditious,
> or inexpensive; [9] the relative administrative difficulty
> in the two fora resulting from court congestion; [10] the
> local interest in deciding local controversies at home;
> [11] the public policies of the fora; and [12] the
> familiarity of the trial judge with the applicable state law
> in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors

beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to

exercise the discretion afforded me by § 1404(a).

5

### 1.   Plaintiffs' Forum Preference

This factor clearly weighs against transfer.  Bio-Rad asserts, however, that

GE's forum choice should be "discounted," D.I. 20 at 3, 6; whereas, GE contends

that I should give its forum choice "paramount consideration," D.I. 16 at 14.

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's

choice of a proper forum is a paramount consideration in any determination of a

transfer request" brought pursuant to § 1404(a), and that this choice "should not be

lightly disturbed."  431 F.2d at 25 (internal quotation marks and citation omitted).

The parties have not cited and I am not aware of any Third Circuit or United States

Supreme Court case that overruled *Shutte*.  *Jumara* cited *Shutte* favorably and

reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be

lightly disturbed."  *Jumara*, 55 F.3d at 879 (internal quotation marks and citation

omitted).  Thus, I agree with GE that binding Third Circuit law compels me to treat

its forum choice as "a paramount consideration" in the § 1404(a) balancing

analysis.

Bio-Rad, however, asks me to ignore *Shutte*'s unambiguous language (and

*Jumara*'s endorsement of *Shutte*) and instead "discount" GE's choice because (1)

GE sued Bio-Rad in 2014 in the Southern District of New York for infringement of

a patent related to the GE Patents and therefore the District of Delaware is not

GE's original choice of forum, D.I. 11 at 1, 10; (2) GE's only connection to

Delaware is the fact that Bio-Sciences Corp. is a Delaware corporation, D.I. 20 at

6; and (3) none of the parties have a physical presence in the District, *id.* at 3, 6.

First, the District of Delaware is GE's choice of forum for this action.  D.I.

16 at 13.  I do not find that GE's decision to sue Bio-Rad in the Southern District

of New York over four and a half years ago should discount its current preference

to litigate the present case in the District of Delaware, where, as discussed above,

venue is proper because Bio-Rad is a Delaware corporation.

Second, I am not persuaded that GE's choice should be "discounted"

because it lacks a physical connection to Delaware.  I will instead follow Judge

Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761

(D. Del. 1975).  Like Judge Stapleton, I read *Shutte*'s "statement of 'black letter

law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763.

As Judge Stapleton explained in rejecting the "home-turf" rule argued by the

defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the
> plaintiff's choice of forum is not an application of any of
> the criteria recited in [§ 1404(a)].  Assuming jurisdiction
> and proper venue, weight is given to plaintiff's choice
> because it is plaintiff's choice and a strong showing under
> the statutory criteria in favor of another forum is then
> required as a prerequisite to transfer.  One can perhaps
> debate whether plaintiff's choice should be given any
> weight at all in a transfer context, but assuming it is to be
> given some weight in cases where the plaintiff lives in the
> forum state, it is difficult to see why it should not also be
> given weight when the plaintiff lives in [another] state. . . .

> [The] plaintiff's contact or lack thereof with the forum
> district will ordinarily be reflected in the 'balance' of
> conveniences, but that contact, per se, is unrelated to
> anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and
of itself merits less weight when the plaintiff has no ties to the selected forum or
when the facts underlying the controversy occurred elsewhere. I do not mean to
suggest that these two latter considerations will not impact the overall transfer
analysis. On the contrary, because these considerations are subsumed and given
weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4
(convenience of the parties), 5 (convenience of the witnesses), 6 (location of books
and records), 8 (practical considerations that could make the trial easy, expeditious,
or inexpensive), and 10 (the local interest in deciding local controversies at home),
a defendant seeking to transfer a case when neither the plaintiff nor the facts giving
rise to the case have any connection to the selected forum will generally have less
difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly
in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media
Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) compels a different conclusion. In
*Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a)
motion to transfer a patent case filed here by a non–United States company. *Id.* at

8

1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Id.* I understand this statement, however, to apply only when the plaintiff, like the plaintiff in *Link_A_Media*, is a non–United States company.  I draw this inference because the court cited in support of its statement two Supreme Court decisions, *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), neither of which involved transfer motions brought pursuant to § 1404(a).  Rather, in both *Sinochem* and *Piper Aircraft*, the Supreme Court reviewed dismissals of actions filed by non–United States plaintiffs based on the common-law *forum non conveniens* doctrine.  As the Court explained in *Piper Aircraft*, "1404(a) transfers are different than dismissals on the ground of *forum non conveniens*."  454 U.S. at 253.  Unlike § 1404(a), "[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum

9

is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (second alteration in original) (internal quotation marks and citation omitted). The doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law" and thus enables a district court to dismiss the case where it would be otherwise "required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251 (internal quotation marks and citation omitted). Because these concerns about foreign law and comparative law issues are not implicated by a § 1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits "less deference" for § 1404(a) purposes only if the plaintiff does not reside in the United States.

In this case, although Plaintiff Bio-Sciences AB is a Swedish company, Plaintiffs Bio-Sciences Corp. and GE Company are domestic companies, and therefore I will follow *Shutte* and give GE's forum choice paramount consideration in balancing the *Jumara* factors.

## 2. Defendant's Forum Preference

This factor favors transfer.

### 3.    Whether the Claim Arose Elsewhere

This factor bears only slightly on the transfer analysis.  On one hand, research and development efforts associated with the NGC system occurred in the Northern District of California.  The connection between those efforts and the Northern District favors transfer.  *See In re Hoffmann–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  On the other hand, patent claims arise wherever the allegedly-infringing products are sold, *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (first citing 35 U.S.C. § 271(a); then citing *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)), and Bio-Rad acknowledges that it sells its "NGC chromatography systems nationwide." D.I. 11 at 11.  Overall, this factor weighs in favor of transfer, but only slightly.

### 4.    The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is neutral.  Bio-Rad, as a multinational company incorporated in Delaware, can demonstrate "inconvenience" for § 1404(a) purposes only if it "prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (second alteration in original) (internal quotation marks and citation omitted); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or

11

unexpected burden, a company should not be successful in arguing that litigation in
its state of incorporation is inconvenient."). Bio-Rad has not identified any
significant inconvenience—let alone a unique or unusual burden—that it would
encounter as a party in this Court. Bio-Rad is a multinational corporation with
thousands of employees. Its size, financial resources, and status as a Delaware
corporation negate its assertion that it would be inconvenienced by having to
litigate in Delaware. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d
718, 731 (D. Del. 2012).

I do not doubt that the Northern District of California is a more convenient
venue for Bio-Rad. Its headquarters is located within the Northern District, and its
employees who are most knowledgeable about the NGC system work in the
Northern District. D.I. 13 at ¶¶ 8–11. But Delaware is more convenient for GE.
D.I. 16 at 16. Although GE must travel regardless of whether the case is litigated
in Delaware or California, two of the plaintiffs, Bio-Sciences Corp. and GE
Company, are headquartered in Massachusetts, which is significantly closer to
Delaware than California. Bio-Sciences AB is in Sweden, which is also closer to
Delaware than California. Therefore, I am persuaded that Delaware is a more
convenient venue for GE.

Overall, after balancing the convenience of litigating in the Northern District
of California for Bio-Rad with (1) Bio-Rad's status as a Delaware corporation and

(2) the convenience of litigating in the District of Delaware for GE, I find that this factor is neutral.

### 5.   The Convenience of the Witnesses

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). "[W]itnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).  In considering this factor, "the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses . . . who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

By way of a sworn declaration from Melissa Eng, Director of Global HR, CDG and LSG at Bio-Rad, Bio-Rad identifies three former Bio-Rad employees whom GE sought to depose in the Southern District of New York litigation.  D.I. 13 at ¶ 12.  Because these former employees are allegedly still located within the Northern District of California, D.I. 12-1 at Exs. D–F, Bio-Rad argues that these

witnesses could not be compelled to testify at trial, *see* Fed. R. Civ. P. 45(c),[1] and thus, it contends that this case should proceed in the Northern District of California where the court could compel their attendance at trial. D.I. 11 at 15. Neither Ms. Eng nor Bio-Rad, however, suggest that anyone from or on behalf of Bio-Rad has ever discussed with the witnesses whether they would be willing to testify at trial—in California or in Delaware.

GE, for its part, argues that this factor should be neutral and explains why it chose to depose these witnesses in the Southern District of New York litigation. D.I. 16 at 17. GE offers that it sought to depose two of the witnesses because they were identified as "having knowledge about the 'design and operation'" of Bio-Rad's NGC system and asserts that it would not necessarily need to depose these witnesses in this litigation because Bio-Rad has identified five current Bio-Rad employees having such knowledge. *Id.* As for the third witness, GE acknowledges that it may seek to depose him but argues that it is too early for either party to know whether such testimony would be introduced at trial. *Id.* at 18.

---

[1] Under Federal Rule of Civil Procedure 45(c), a subpoena may command a person to attend trial "only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."

Although Bio-Rad has identified specific witnesses located outside of this Court's subpoena power, I find that it has failed to show that these witnesses would refuse to appear in Delaware for trial without a subpoena or even that they would be necessary witnesses, given GE's explanation for why it sought to depose them in the Southern District litigation. Therefore, I find that this factor is neutral.

### 6.   The Location of Books and Records

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). *Jumara*, however, instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879.

In this case, Bio-Rad argues that its "documents and records relating to the NGC chromatography systems are either located in or maintained from and accessible at Bio-Rad's California headquarters." D.I. 11 at 15. But Bio-Rad has not identified any evidence that could not be produced in Delaware; nor has it shown that the documentary evidence relevant to this action is found exclusively in the Northern District of California. Given the advances in technology that have reduced the burdens associated with producing records in a distant district and the

Third Circuit's instruction in *Jumara* to focus on whether the records in question

cannot be produced in the competing fora, *see Intellectual Ventures*, 842 F. Supp.

2d at 758–59, I find that this factor weighs in favor of transfer but I will give the

factor only minimal weight.

### 7.   Enforceability of the Judgment

This factor is neutral, as judgments from this District and the Northern

District of California would be equally enforceable.

### 8.   Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could

make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Given the fact

that many of the witnesses and most of the relevant records are in the Northern

District of California, I agree with Bio-Rad that the overall cost of trial would

likely be less if the matter were transferred. Although I did not consider issues of

economic cost and logistical convenience with respect to potentially relevant Bio-

Rad employees when I assessed the "witness convenience" factor, it is appropriate

to consider these issues in assessing "practical considerations." *See Joao Control*

*& Monitoring Sys., LLC v. Ford Motor Co.*, 2013 WL 4496644, at *7 (D. Del.

Aug. 21, 2013); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463,

475–76 (D. Del. 2013). But, given the relative size and financial resources of Bio-

Rad, this factor weighs only slightly in favor of transfer.

**9.     Relative Administrative Difficulty Due to Court Congestion**

The parties contend that this factor is neutral.

**10.     Local Interest in Deciding Local Controversaries at Home**

The local controversy factor is neutral.  First, "[p]atent issues do not give

rise to a local controversy or implicate local interests."  *TriStata Tech., Inc. v.*

*Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008).  Second, Bio-Rad's

dispute with GE, which does not reside in California, is not a "local controversy"

in the Northern District.  One could fairly conclude that this factor weighs against

transfer because this action involves a dispute between Delaware corporate

citizens; but I will treat this factor as neutral because Bio-Sciences Corp. and Bio-

Rad's Delaware corporate status also bears on the next factor (public policies of

the fora).

**11.     Public Policies of the Fora**

Delaware's public policy encourages Delaware corporations, such as Bio-

Sciences Corp. and Bio-Rad, to resolve their disputes in Delaware courts.  *Round*

*Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012).  GE

has not cited any countervailing California public policy.  Thus, this factor weighs

against transfer. *See Intellectual Ventures*, 842 F. Supp. 2d at 760; *see also In re*

*Altera Corp.*, 494 F. App'x at 53 ("[T]he relevant inquiry [in the transfer analysis]

17

is broad enough to include the Delaware court's interest in resolving disputes involving its corporate citizens.").

### 12. Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

GE's claims arise under the federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

\* \* \* \*

In sum, of the 12 *Jumara* factors, six are neutral, two weigh against transfer, and four weigh in favor of transfer. Of the two factors that weigh against transfer, one is of paramount importance. Of the four factors that weigh in favor of transfer, three weigh only slightly in favor of transfer and one deserves only minimal weight. Of the six neutral factors, one actually weighs against transfer, but I have treated it as neutral because it overlaps with another factor that weighs against transfer.

Having considered the factors in their totality and treated GE's choice of this forum as a paramount consideration, I find that Bio-Rad has failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer, and therefore, I will deny Bio-Rad's motion to transfer.

The Court will enter an order consistent with this Memorandum Opinion.