## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CYTIVA SWEDEN AB, and GLOBAL LIFE SCIENCES SOLUTIONS USA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BIO-RAD LABORATORIES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 18-1899-CFC-SRF
Consolidated

**PUBLIC VERSION**

## DEFENDANT BIO-RAD LABORATORIES, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DATED SEPTEMBER 2, 2020

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Tel: (650) 801-5000

David Bilsker
Felipe Corredor
Andrew E. Naravage
Michael D. Yoo
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
Tel: (415) 875-6600

-and-

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Alan R. Silverstein (#5066)
Tracey E. Timlin (#6469)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
asilverstein@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant Bio-Rad
Laboratories, Inc.*

Anne S. Toker
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000

Dated:  September 16, 2020

Public Version Dated: September 23, 2020

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Prior History Of The Patents-In-Suit ........................................2

    B.    Plaintiffs' Initial Conception Contentions ...............................2

    C.    Plaintiffs Completely Change Their Contentions ....................3

    D.    Plaintiffs' Witness Identifies Key Regulatory Submissions .................4

    E.    Magistrate Judge Denies Bio-Rad Relief ................................4

III.  LEGAL STANDARD .............................................................................5

IV.   ARGUMENT.........................................................................................5

    A.    The Order Erred In Denying Bio-Rad's Request To Strike
           Plaintiffs' Untimely Contentions ...........................................5

           1.    The Order Erred In Finding Bio-Rad Was Not Prejudiced ........6

           2.    The Order Erred In Finding Plaintiffs' Offer To Cure Was
               Sufficient ...................................................................7

           3.    The Order Erred Regarding Evidence Of Bad Faith .................9

           4.    The Order Erred In Finding Factor Five Was Undisputed .......10

    B.    The Order Erred In Not Compelling The Agency-Submitted
           Documents .........................................................................10

V.    CONCLUSION....................................................................................12

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Parkland Sch. Dist.*,
   230 F. App'x 189 (3d Cir. 2007) .......................................................6, 7

*Bridgestone Sports Co. v. Acushnet Co.*,
   2007 WL 521894 (D. Del. Feb. 15, 2007) .......................................5, 6

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
   2017 WL 11558096 (D. Del. Dec. 11, 2017) ...................................7, 8

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977)............................................................5, 10

*Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*,
   2016 WL 8488409 (D. Del. Feb. 1, 2016)...........................................10

*TQ Delta, LLC v. Adtran, Inc.*,
   2020 WL 4529865 (D. Del. July 31, 2020) ......................... 6, 7, 8, 10

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012)............................................................9, 10

**Statutory Authorities**
35 U.S.C. § 102(g) ..................................................................................6

**Rules and Regulations**
Fed. R. Civ. P. 72(a).............................................................................1, 5

## I.     __INTRODUCTION__

Bio-Rad Laboratories, Inc. ("Bio-Rad") brings these Objections under Rule 72(a) seeking reversal of two decisions Magistrate Judge Fallon made during a September 2, 2020 teleconference concerning (1) Plaintiffs Cytiva Sweden AB ("Cytiva") and Global Life Sciences Solutions USA LLC's (collectively "Plaintiffs") abandonment of their interrogatory response and 30(b)(6) testimony on conception and reduction to practice in favor of a new interrogatory response one week before fact discovery closed, and (2) Plaintiffs' failure to diligently search for competition documents supplied to a federal agency. (Ex. 1 at 23-27, 38-39 (the "Order").)

***First***, after suing on the same patent family five years ago in S.D.N.Y., conducting multiple USPTO proceedings on these patents, and suing here in 2018, Plaintiffs identified their conception and reduction to practice positions—an issue fundamental to one of Bio-Rad's defenses—in June 2020. After Bio-Rad took four depositions on the issue based on the interrogatory response, including a 30(b)(6) deposition, and forewent others, Plaintiffs abandoned their interrogatory response and 30(b)(6) testimony in favor of a new theory one week before fact discovery closed. The Order denied Bio-Rad's motion to strike this new theory. This was clear error because the Order ignored the underlying reasons for allowing

"supplementation" of responses, including sophistication of the parties in applying the relevant factors, which in any event, all favor Bio-Rad's position.

*Second*, Plaintiffs seek lost profits damages and allege the relevant chromatography market contains only two players. One of Plaintiffs' witnesses testified, however, the company submitted documents to regulatory agencies describing other market competitors. The Order denied Bio-Rad's motion to compel production of these documents. This was clear error because these documents are relevant and unburdensome to search for.

## II.   BACKGROUND

### A.   Prior History Of The Patents-In-Suit

Plaintiffs have a long history asserting these patents. In 2014, Plaintiffs sued Bio-Rad, alleging infringement of a parent patent to the patents-in-suit in this case. (D.I. 11 at 1, 5.) Bio-Rad then filed an *inter partes* review, leading to a stay, while Plaintiffs sought a reissue of their patent. (D.I. 11 at 2-5.) In parallel, Plaintiffs prosecuted multiple continuation applications of the parent patent, including four that issued as the patents asserted here (collectively, the "patents-in-suit"). (*Id.* at 3.)

On November 11, 2018, Plaintiffs filed the complaint in this action. (D.I. 1.) The S.D.N.Y. action was consolidated into this case. (D.I. 44.)

### B.   Plaintiffs' Initial Conception Contentions

On May 24, 2019, Bio-Rad served a contention interrogatory requesting that Plaintiffs provide their position regarding conception and reduction to practice. (Ex.

2

2 at 7.) Plaintiffs did not provide any substantive response until June 8, 2020—over a year after Bio-Rad served the Interrogatory and six years after the S.D.N.Y. action began—stating: "Each claim of the Asserted Patents were conceived by Johan Blomberg and Mats Lundquist in or around **June of 2005** and reduced to practice no later than in or around **December 2005**." (Ex. 3 at 6-8.) Plaintiffs cited over 100 documents directed to a "p0" prototype as evidence of reduction to practice. (*Id.*)

Relying on this response, Bio-Rad created a strategy to confront Plaintiffs' claims, including a specific approach to the depositions of Soderman, Hareland, Bjernulf, and Lundkvist. Lundkvist was deposed individually and as Plaintiffs' 30(b)(6) witness on conception and reduction to practice.

### C.   <u>Plaintiffs Completely Change Their Contentions</u>

After Lundkvist's deposition, Plaintiffs contend they wanted to change the dates they had identified in their interrogatory response and 30(b)(6) testimony. (Ex. 1 at 18:23-19:11.) Yet Plaintiffs did not take any action for ***an entire month*** after Lundkvist's June 26 deposition. On July 24, 2020, Plaintiffs amended their interrogatory response to move these dates by almost a year, now claiming each asserted claim "was conceived by Johan Blomberg and Mats Lundquist no later than ***August 2006*** and reduced to practice no later than ***October 2006***." (Ex. 4 at 9-10.) Plaintiffs cited over 60 new documents not previously cited, abandoned the "p0" prototype they previously relied on for reduction to practice, and switched to an

3

entirely new "p1" prototype Plaintiffs had never raised before. (*Id.*) The additional cited documents had been long in Plaintiffs' possession, as the Order found. (Ex. 1 at 26:15-18.)

Plaintiffs provided no explanation for their delay (Ex. 5 at 2-7), which left only one week before the July 31 fact discovery deadline, and after Bio-Rad had already deposed all of Plaintiffs' witnesses.

### D.    **Plaintiffs' Witness Identifies Key Regulatory Submissions**

Plaintiffs seek lost profit damages. In support, Plaintiffs contend there are only two players in the relevant market. (D.I. 139 at 3.) Bio-Rad disputes this. On July 3, 2020, Bio-Rad deposed Dr. Nigel Darby, whom Plaintiffs allege has knowledge of the competitive landscape. He testified about regulatory submissions that identified competitors in the chromatography field, which Plaintiffs claims their patents cover. (Ex. 6 at 130:18-131:9, 136:2-20.) Plaintiffs have not produced any such documents, which certainly would have information about competition, especially given the FTC made Plaintiffs' acquirer to divest certain chromatography assets as a prerequisite for acquisition. (Ex. 8.)

### E.    **Magistrate Judge Denies Bio-Rad Relief**

After numerous meet-and-confers, Bio-Rad, on August 27, 2020, sought relief on, *inter alia*, Plaintiffs' belated conception contentions and their failure to produce

competition-related documents. (D.I. 139.) On September 2, 2020, Magistrate Judge Fallon denied Bio-Rad's motion. (Ex. 1 at 23-27, 38-39.)

## III.   <u>LEGAL STANDARD</u>

A district court should set aside a magistrate judge's order if it "is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

Courts in the Third Circuit examine several factors in deciding whether to strike untimely disclosures: "(1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir. 1977)).

## IV.   <u>ARGUMENT</u>

### A.   <u>The Order Erred In Not Striking Plaintiffs' Untimely Contentions</u>

As a threshold matter, the Order analyzed the *Pennypack* factors, set forth above. (Ex. 1 at 24-27.) But the Order ignored that courts use a more lenient standard to exclude evidence "in the case of sophisticated, complex litigation involving parties represented by competent counsel[.]" *Bridgestone*, 2007 WL 521894, at *4. That is undisputedly the case here. (Ex. 1 at 11:18-12:17.)

In any event, the Order clearly erred in not striking Plaintiffs' changed, untimely contentions because each *Pennypack* factor favors exclusion.

### 1.    The Order Erred In Finding Bio-Rad Was Not Prejudiced

The Order found Bio-Rad failed to "provide any specific showing of prejudice[.]" (Ex. 1 at 25:1-9.) This is incorrect. Courts routinely find prejudice to a moving party where untimely disclosures cause additional discovery, expenses, and/or delay. *See, e.g.*, *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 195 (3d Cir. 2007); *TQ Delta, LLC v. Adtran, Inc.*, 2020 WL 4529865, at *2 (D. Del. July 31, 2020); *Bridgestone*, 2007 WL 521894, at *5. Here, Bio-Rad provided a detailed explanation of the unfair surprise and prejudice it suffered from Plaintiffs' eleventh-hour shift. Bio-Rad had been diligently preparing its defense of prior development— that Plaintiffs were unable to prove their conception date, thus requiring them to rely on the filing date of its earliest application, and Bio-Rad's own products invalidate the patents-in-suit. 35 U.S.C. § 102(g) (pre-AIA); D.I. 139 at 1-2. Plaintiffs' new dates completely alters Bio-Rad's strategy and gives Plaintiffs an unfair tactical advantage.

Moreover, Plaintiffs sprung their new theory after Bio-Rad already took all of Plaintiffs' depositions—at least four or five of which related to conception. Indeed, Bio-Rad forewent additional depositions based on Plaintiffs' 30(b)(6) testimony. (Ex. 1 at 8:16-23.) To avoid prejudice to Bio-Rad, the Court "would have…to allow

[Bio-Rad] again to depose [numerous witnesses], which would…result[] in more expense and delay" (*Allen*, 230 F. App'x at 195)—all of which would have to occur after fact discovery had closed, given Plaintiffs served their changed contentions in the final seven days. At this point, Bio-Rad has been entirely precluded from deposing any of Plaintiffs' witnesses on their new contentions and the 60+ new documents supporting those contentions.

The Order erred in finding Bio-Rad was not prejudiced on these facts.

### 2.    The Order Erred In Finding Plaintiffs' Offer To Cure Was Sufficient

The Order found factors two and three weighed against striking because Plaintiffs "offered to cure any alleged prejudice through" supplemental depositions "while there was ample time" left in discovery, and Bio-Rad allegedly failed to demonstrate any "potential disruption of an orderly and efficient trial." (Ex. 1 at 25:10-23.) This is incorrect.

Courts find that the second and third factors favor exclusion if it would require "re-opening discovery to give Defendant an opportunity to cure the prejudice," especially where the late disclosure "creates a new ballgame…that Defendant did not prepare for during discovery." *TQ Delta*, 2020 WL 4529865, at *2. Courts also favor exclusion where the late disclosures prevented the movant from discovery it could have otherwise conducted. *See, e.g.*, *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *11 (D. Del. Dec. 11, 2017).

Here, the prejudice to Bio-Rad could not be cured. Plaintiffs revealed their new theory on July 24, 2020—one week before fact discovery closed and seven weeks before opening expert reports were due. Even if Bio-Rad accepted Plaintiffs' offer, this would have required analyzing 60+ newly cited documents and retaking at least four depositions, with no indication when witnesses/attorneys would be available. Bio-Rad would have to completely shift its analysis and incorporate all the new evidence into expert reports due shortly thereafter. And even if Bio-Rad was able to "provide some response, [this] does not replace the months of analysis and discovery that [defendant] would have conducted had it known Plaintiffs' true [conception] theories." *Id.*

Bio-Rad should not have to redo discovery to accommodate Plaintiffs' last-minute decision they are unsatisfied with their previous contention. There is little point to contentions if Plaintiffs can simply change them at the end and conduct trial by ambush. *See* Fed. R. Civ. P. 26(e) (amended in 1993 to add supplementation requirement so a requesting party did not constantly have to resubmit the same request to capture new information); *Integra*, 2017 WL 11558096, at *8 ("Rule 26(e) is not a loophole" for a party to "revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein"). Plaintiffs fundamentally changed their theory and "create[d] a new ballgame" (*TQ Delta*, 2020 WL 4529865, at *2) based on what they essentially admitted was, at best, a failure to properly

conduct diligence. The Order erred in finding factors two and three weighed against exclusion.

### 3.    The Order Erred Regarding Evidence Of Bad Faith

On factor four, the Order found Bio-Rad only "speculated" about bad faith and found "there has to be some type of willfulness or bad faith conduct" by Plaintiffs. (Ex. 1 at 26.) This was error. Under factor four, proof of willfulness is not required, and courts may also consider the non-movant's "justifications for failing to" timely disclose the relevant information. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012).

Here, the timing of Plaintiffs' actions tells the story: Plaintiffs have been litigating over this family of patents for five years. They strategically selected one conception story, exposed it to cross-examination in numerous depositions, and once that story no longer appeared to their liking, selected a completely new conception story at the end of discovery. At the hearing, Plaintiffs claimed the importance of module interchangeability "came to light" during fact discovery. (Ex. 1 at 18:16-19:11.) But this excuse does not hold water: interchangeable modules have been at the center of this case since the 2014 S.D.N.Y. action. It is a limitation in ***every single claim***, to achieve the flexible and configurable systems the patents claim the field is missing (D.I 1-1 to 1-4), and appears as a major factor in both the abstract and invention summary (D.I. 1-1 at 1:18-20). Plaintiffs "have provided no persuasive

explanation for" their untimely shift, and "[i]t is not the district court's responsibility to help a party correct an error or a poor exercise of judgment[.]" *ZF Meritor*, 696 F.3d at 299. The Order clearly erred in holding otherwise.

### 4. The Order Erred In Finding Factor Five Was Undisputed

The Order found the last *Pennypack* factor was "not in dispute as…both sides acknowledge the importance of the information[.]" (Ex. 1 at 26:22-25.) Not so. This factor relates to whether the late contentions are "so important to Plaintiff's case that they should be admitted despite the prejudice to Defendant." *TQ Delta*, 2020 WL 4529865, at *2; *see also Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, 2016 WL 8488409, at *4 (D. Del. Feb. 1, 2016) (delay in seeking to "correct" disclosures "subverts the notion of its criticality").

Here, Plaintiffs' new contentions are not so important that they should be admitted despite the prejudice to Bio-Rad. That Plaintiffs waited until the final week of fact discovery to reveal their new theory, despite having full access to their own documents and witnesses relating to conception, undermines their alleged criticality.

### B. The Order Erred In Not Compelling The Agency-Submitted Documents

Market conditions are undisputedly critical to Plaintiffs' case for lost profits. Agency-submitted documents concerning competitors are relevant, and may very well undermine Plaintiffs' damages theory, because a company seeking acquisition approval is motivated to inform agencies that market competition is robust and

diverse. The Order erred in not compelling such documents.

First, the Order provided that Bio-Rad's discovery requests "were not specifically directed to such documents." (Ex. 1 at 38:18-19.) This was error. Bio-Rad did not know Plaintiffs made agency submissions, and what they might contain, until Plaintiffs' witness testified about the documents. When he did, Bio-Rad immediately requested them. (Ex. 9.) Bio-Rad requested documents "sufficient to show" market conditions (Ex. 7, Nos. 64, 66, 68)—but that does not permit Plaintiffs to cherry-pick their best documents and withhold documents undermining their position.

Second, the Order found the documents "would be cumulative and not proportional to the needs of the case." (Ex. 1 at 39:14-16.) This was error. Because the submissions occurred during a corporate acquisition, they were likely directed to antitrust issues and could be key evidence about the market. Indeed, the company that acquired Plaintiffs had to divest assets to permit the acquisition, indicating agencies reviewed market conditions. (Ex. 8.)

Plaintiffs are best-positioned to gather these documents, and it is not burdensome to diligently search for them. Asking one witness as a "preliminary investigation" is insufficient. (Ex. 1 at 35:18-36:2.) Plaintiffs, a large company with in-house lawyers embroiled in litigation, surely have records of their submissions to agencies that can be found through diligent searching.

## V.   <u>CONCLUSION</u>

Bio-Rad respectfully requests that the Court set aside the Order and grant Bio-Rad's requested relief.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:   */s/ Alan R. Silverstein*

Kevin P.B. Johnson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Tel: (650) 801-5000

David Bilsker
Felipe Corredor
Andrew E. Naravage
Michael D. Yoo
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
Tel: (415) 875-6600

Anne S. Toker
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Alan R. Silverstein (#5066)
Tracey E. Timlin (#6469)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
asilverstein@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant Bio-Rad
Laboratories, Inc.*

Dated:  September 16, 2020
6871402/45671

 Public Version Dated: September 23, 2020

12